FALKENHEINER, Judge Pro Tem.
Harvey Guidry, defendant, was charged with simple burglary in violation of LSA-R.S. 14:62. The crime was alleged to have occurred on February 8, 1984, and on December 14, 1984, defendant was found guilty as charged after trial by jury. On May 28, 1985, after the State had filed an habitual offender bill, the Trial Court found the defendant to be a fourth offender and sentenced him to twenty (20) years in custody of the Department of Corrections at hard labor. Defendant now appeals his conviction and sentence.
FACTS
On February 8, 1984, at the Hennings Elementary School in Sulphur, Louisiana, Mrs. Davis, a teacher, noticed a man pass by her classroom door several times. She stepped out of her classroom, noticed him walking down the hall and proceeded towards the principal’s office to inquire if this man was authorized to be in the building. Mrs. Ellender, the principal’s secretary, Mrs. Davis and another teacher walked towards the area where the man had been noticed and saw him coming out of the door of the teachers lounge. No one else was in the lounge at that time. When questioned by Mrs. Ellender, the man stated that he wished to apply for a job. The man, Mrs. Ellender and Charles Richie, the principal, who had approached the group, walked back to the principal’s office. According to Mrs. Ellender, the man was in a hurry, did not fill out a formal application, gave a telephone number, address and name (Robert Guidry), and stated that he had worked as a janitor in Jennings. Approximately an hour after the man left, at the next break, two employees who kept their purses in the lounge found money missing from their purses. The next morning the man was again seen in the halls. Mr. Richie approached him and asked him if he knew anything about the theft the day before. The suspect denied any involvement with the burglary and stated that he had returned to correct a telephone number he had given the day before. The man was seen driving away in a green truck. Mr. Richie contacted the police after he found that the address, name and telephone number did not match and appeared to be false.
There had been a burglary in Sulphur, not associated with the instant offense, in which a black 1982 Oldsmobile had been involved, and the Sulphur police had issued instructions to its patrolmen to stop any such vehicle and make inquiries as to the identification of the drivers, and obtain any necessary information that might be availiable. On April 6, 1984, Patrolman Lemke of the Sulphur police observed a vehicle meeting the description of that contained in his routine orders. He called into the police department advising them of the description of the vehicle which he was observing and asked for further instructions. He was advised that the instructions remained valid and that he should stop the vehicle.
Pursuant to those orders Lemke stopped the vehicle which was being driven by defendant. Lemke did not know defendant and had him produce his driver’s license. Lemke then advised the defendant of the purpose of the stop, telling him that the vehicle had been used in a recent burglary and that the police were looking for it. Defendant then advised Lemke that he had just purchased the vehicle. Lemke then asked the defendant if he would come down to the police station and talk to the detective about the vehicles and the details of his recent purchase. Defendant knew the way to the police station and proceeded to it with Lemke following him.
*1290 When defendant got to the police station he was interviewed by Detectives McCann and Miles where he was advised of all of his rights. He waived those rights and, also, after being fully informed of his rights, executed a permission to search the automobile. Defendant informed the detectives that he had recently purchased the black Oldsmobile and that he had traded in an old, green Ford pickup in Jennings, Louisiana. He also stated that he was simply passing through the area. After the search of the automobile, defendant was arrested for two traffic offenses, driving with an expired inspection sticker, failure to acquire proper Louisiana registration, and other charges that arose out of the search of the vehicle but were not detailed in this record, presumably for the purpose of protecting defendant’s rights with respect to introduction of evidence of extraneous offenses.
On April 6, 1984, when the defendant was arrested, teachers who had viewed the alleged burglar were asked by the police to examine a photographic lineup. Seven of the eight people identified the defendant as the alleged burglar. At trial, the defendant and other defense witnesses denied that the defendant was in the vicinity of the school on the day of the burglary and that the defendant owned a green truck.
At trial defendant reserved four assignments of error. Assignments numbers three and four were not briefed nor argued and, thus, are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).
ASSIGNMENT OF ERROR NO. 1
Defendant characterizes this error as follows:
“Defendant was arrested and taken into custody without a warrant, and without probable cause or legal justification in violation of the rights guaranteed to him under the Fourth and Fourteenth Amendments to the Constitution of the United States.”
Defendant’s claim is without merit. The Fourth and Fourteenth Amendments to the United States Constitution as well as Article 1, Section 5 of the Louisiana Constitution do protect citizens against unreasonable searches and seizures. Neither Constitution prohibits law enforcement officers from making investigatory stops with minimal intrusion into citizen’s rights of privacy. This principle has been recognized in Louisiana statutorily in LSA-C.Cr.P. 215.1:
“A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.”
It has been stated that neither the Constitution nor the statute require probable cause, but the detaining officer must have some knowledge of facts tending to criminal behavior to the extent of justifying a reasonable suspicion. A reviewing Court is also required to assess the reasonableness of the officer’s conduct and the extent of the interference with the individual’s freedom of movement in order to weigh the social necessity of the search and seizure against the harm of invasion of privacy. State v. Bolden, 380 So.2d 40 (La.1980).
We have made this assessment and find that under the facts of this case, the officer’s action was reasonable. The police had information that a vehicle, similar to that of defendant’s, had been involved in prior burglaries. Officer Lemke observed such a vehicle. He did not make an immediate stop, but called into his station to determine whether the stop order was still valid. Only after having been informed that it was, he stopped the defendant. Even then, the intrusion on defendant’s privacy was minimal. The officer asked for identification, and informed defendant of the reason for the stop. At that point defendant voluntarily gave the officer information about the automobile which required further investigation, and the resultant escalation into the defendant’s right of privacy, all of which was necessary and reasonable and unavoidable under the circumstances.
*1291 Officer Lemke did not formally arrest defendant, but simply inquired of him as to whether or not he would go and discuss this matter with the detectives in light of his statement that he had only recently bought the car after having been informed that it had been involved in burglaries. Defendant, at that point, indicated a complete willingness to go and expressed no difficulties in that respect. It was not necessary for Lemke to exert his authority any further and he did not do so. Defendant then drove his own automobile to the police station and was followed by Lemke.
We reiterate that we find no Constitutional or statutory infirmities in the actions of the police officers, and assignment number one is without merit.
ASSIGNMENT OF ERROR NO. 2
Defendant characterizes this error as follows:
“The Judgment and/or conviction is contrary to the law and evidence particularly, though not exclusively, inasmuch as there is no proper and/or believable evidence in the record which is sufficient to establish and prove beyond a reasonable doubt all of the elements which are necessary to constitute the offense with which the defendant was convicted.”
This assignment requires us to consider two inter-related principles of law. The first principle is that a conviction cannot stand unless, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The second principle is that to support the conviction based on circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. (LSA-R.S. 15:438; State v. Chism, 436 So.2d 464 (La.1983).
Defendant was charged with simple burglary which is defined in LSA-R.S. 14:62 as follows:
“Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein, other than as set forth in Section 60.”
In order to convict the defendant of simple burglary, the jury must find the following:
(1) That the defendant entered the teachers lounge at the Hennings Elementary School on or about the date indicated; and
(2) That the defendant was not authorized to enter the teachers lounges at the Hennings Elementary School; and
(3) That the defendant entered with a specific intent to commit the crime of theft in the teachers lounge of the Hennings Elementary School.
The defendant argues that the State failed to prove these elements of the offense for two basic reasons. First, defendant contends that the State failed to prove beyond reasonable doubt that he was identified as the individual present at the Hen-nings School on the date of the burglary. Secondly, he argues that the State did not prove beyond reasonable doubt that he had specific intent to commit the theft, or that he did in fact take the money from the purses, raising the possible application of the circumstantial evidence rule.
The defendant’s argument relative to the identification is clearly without any merit, and the State proved beyond reasonable doubt the existence of the first two elements of the offense. At trial the State produced eight witnesses who observed the defendant in the school on the date of the burglary, and some of whom saw him the following day. Seven of these eight witnesses positively identified him. Defendant had admitted that he had owned an old, green pickup truck at the time of the offense. The State produced evidence that the suspect of the burglary had departed the scene in an old, green pickup truck. The State also proved that defendant was not authorized to enter the teachers lounge at the Hennings Elementary School and *1292 that he was not authorized to enter the school at all except for visiting the business office.
The State proved the intent to commit the theft by evidence that the defendant actually committed theft of the money from the two purses in the teachers lounge. Intent is a question of fact which may be inferred from the circumstances, and the jury is entitled to use their ordinary experiences in weighing all of the circumstances of the case to determine whether the requisite intent is present. LSA-R.S. 15:445. In State v. Williams, 383 So.2d 369 (La.1980), the Louisiana Supreme Court said:
“Specific intent is a state of mind and as such, it need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant.” (Emphasis supplied.)
The teachers lounge was clearly marked and defendant’s entry into it was not accidental or inadvertent. Considered with the evidence that defendant was not authorized to enter the teachers lounge, the jury was correct in concluding that his entry was intentional.
Consideration of whether the third element of simple burglary was proved beyond reasonable doubt in this case requires examination of the record to ascertain whether or not the State proved that the defendant actually took the money from the purses involved. If the jury could conclude that the State had produced such proof, they certainly could infer that he had the specific intent necessary. There was no direct evidence of what occurred while defendant was in the teachers lounge and that he took the money from the purses. He was seen exiting the lounge thirty minutes to one hour before the theft of the money was discovered. These circumstances require the consideration of the circumstantial evidence rule, and, specifically, whether the State’s evidence excludes every reasonable hypothesis of innocence. In making this determination adverse to the defendant the jury had all of the circumstances surrounding the incident reviewed above, including the evidence indicating that defendant’s entry into the lounge was intentional and unauthorized and could not have been inadvertent. The jury also had other actions of the defendant to consider. The State produced evidence that the defendant advised the principal of the school that he was in the building to seek employment. He gave a false name, false telephone number and address, all of which would tend to negate any reasonable hypothesis of innocence. The suspect was seen leaving in an old, green Ford truck and the defendant had advised the police officers that he had traded in such a truck on the black Oldsmobile. He denied at trial that he knew anything about the truck. This would be another factor tending to negate any reasonable hypothesis of innocence.
Finally, the defendant testified in court and the jury had full opportunity to listen to, and evaluate, his story. He denied ever having been to the Hennings Elementary School, he denied having the green Ford pickup truck, and he attempted to transfer blame for the Hennings School burglary to other persons. The defendant also denied taking the money or having anything to do with this crime. After having heard all of the circumstances involved in the case, considering the defendant’s actions, and having heard him testify in court, the jury had every reasonable ground to believe that he was not telling the truth and that he was in fact the person who had taken the money.
We therefore find no merit in defendant’s assignment of error number two.
The conviction and sentence will be affirmed.
AFFIRMED.